UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY CHAVEZ,

               Petitioner,

     v.

CLARK E. DUCART, Warden,

               Respondent.

Case No.  13-cv-04690-YGR (PR)

**ORDER GRANTING RESPONDENT'S RENEWED MOTION TO DISMISS PETITION AS UNTIMELY; AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Jerry Chavez, a state prisoner, filed the instant *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Before the Court is Respondent's renewed motion to dismiss the instant petition as untimely under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d).  Dkt. 25.  Petitioner filed an opposition to the renewed motion.  Dkt. 29.  Respondent filed a reply.  Dkt. 30.

Having read and considered the papers submitted and being fully informed, the Court GRANTS Respondent's renewed motion and DISMISSES the petition with prejudice.

I.      **BACKGROUND**

As discussed in the Court's February 20, 2015 Order denying Respondent's previously-filed motion to dismiss, the following procedural background is undisputed:

> On November 8, 2010, in Santa Clara County Superior Court Case No. CC768276, Petitioner pled guilty to voluntary manslaughter with personal use of a firearm in exchange for the dismissal of a charge of felony murder. Dkt. 1 at 4.  On March 11, 2011, he was sentenced to twenty-one years in state prison, consecutive to his other pending case. Dkt. 1, Ex. F.  In Santa Clara County Superior Court Case No. 211398, Petitioner pled guilty to conspiracy to sell drugs, conspiracy to transport drugs, and participation in a criminal street gang. Dkt. 1 at 6.  Also on March 11, 2011, he was sentenced to five years and eight months.  Dkt. 1, Ex. G.  Petitioner did not appeal the aforementioned convictions.
>
> On July 17, 2012,[1] Petitioner filed his first state habeas

---

[1] A *pro se* federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir. 2001),

petition in the California Supreme Court, which was denied on November 14, 2012. Dkt. 15, Ex. 1 (Case No. S204213).

On September 13, 2012, Petitioner filed a second state habeas petition in the California Supreme Court, which was denied on November 14, 2012, with a citation to *In re Dexter*, 25 Cal. 3d 921, 925-926 (1979) (petitioner must exhaust administrative remedies for claim). Dkt. 15; Ex. 2 (Case No. S205377).

On October 25, 2012, Petitioner filed a motion to modify the restitution fines in the Santa Clara County Superior Court, which was denied on October 29, 2012, as waived, untimely, and for lack of jurisdiction. Dkt. 1, Ex. N.

On December 12, 2012, Petitioner filed a state habeas petition in the California Court of Appeal, which was denied on January 18, 2013. Dkt. 15, Ex. 3 (Case No. H039100).

On March 14, 2013, Petitioner filed his third state habeas petition in the California Supreme Court, which was denied on May 15, 2013. Dkt. 15, Ex. 4 (Case No. S209369).

On December 30, 2013, Petitioner filed another habeas petition in the California Court of Appeal, which was denied on February 21, 2014. Dkt. 15, Ex. 5 (Case No. H040507). The denial order noted that to the extent Petitioner was claiming he was improperly validated as a gang member, the petition was denied without prejudice to allow him to exhaust administrative remedies. *Id.*

On September 4, 2013,[2] Petitioner filed the instant federal petition, alleging in part that the trial court improperly imposed restitution fines in his two cases and breached the terms of the plea agreement, and that his attorney was ineffective for failing to object to the restitution fines. Dkt. 1 at 4-6.[3]

Dkt. 22 at 1-2 (footnotes in original and renumbered).

On November 26, 2013, the Court issued an order to show cause. Dkt. 10. On March 26, 2014, in lieu of an answer, Respondent moved to dismiss the petition as untimely. Dkt. 15. After full briefing by the parties, the Court issued an order finding that the petition "barred as untimely

---

*vacated and remanded on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). Petitioner signed his first state supreme court petition and his federal habeas petition on July 17, 2012 (Dkt. 15 at note 1) and September 4, 2013 (Dkt. 1 at 7), respectively. For the purposes of this discussion, the Court deems those petitions as filed on those dates. *See Saffold*, 250 F.3d at 1268.

[2] *See supra* note 2.

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Petitioner.

1    under 28 U.S.C. § 2244(d)(1) unless he can show that he is entitled to . . . equitable tolling."[4]  Dkt.

2    22 at 6.  In his opposition to the motion, Petitioner had argued that he is entitled to equitable

3    tolling on the grounds that his lack of access to the law library contributed to his delay in filing his

4    federal petition.  Dkt. 16 at 1-2.  However, the Court found that Respondent had not adequately

5    addressed that argument.  Dkt. 22 at 10.  Consequently, the Court denied the motion to dismiss the

6    petition as untimely, without prejudice to Respondent's renewing the motion and addressing

7    equitable tolling.  *Id.*

8         In the instant renewed motion to dismiss, Respondent renews the argument that all of the

9    claims in the petition are untimely and addresses the matter of equitable tolling.  Dkt. 25 at 3-6.

10   On July 27, 2015, Petitioner filed an opposition.  Dkt. 29.  On August 10, 2015, Respondent filed

11   a reply.  Dkt. 30.

12   **II.      DISCUSSION**

13         **A.      Overview**

14         AEDPA, effective April 24, 1996, imposes a limitations period on petitions for a writ of

15   habeas corpus filed by state prisoners.  In prisoner actions challenging non-capital state

16   convictions or sentences, a habeas petition must be filed within one year of, inter alia, the date the

17   judgment became final after the conclusion of direct review or the time passed for seeking direct

18   review.   28 U.S.C. § 2244(d)(1).  If a petitioner could have sought review by the state court of

19   appeals or the state supreme court, but did not, the limitation period will begin running against

20   him the day after the date on which the time to seek such review expired.  *See Smith v. Duncan*,

21   297 F.3d 809, 812-13 (9th Cir. 2002) *overruled on other grounds by Pace v. DiGuglielmo*, 544

22   U.S. 408, 418 (2005); *see also* Cal. Rule of Court 8.308(a) (providing that appeal from criminal

23   judgment must be filed within sixty days after rendition of judgment or making of order being

24   appealed) (formerly Cal. Rule of Court 31).

25   _____

26        [4] The Court previously found that statutory tolling was not sufficient to overcome the time
     bar to Petitioner's federal habeas petition.  Dkt. 22 at 4.  The Court also rejected Petitioner's
27   argument that he was entitled to a delayed commencement of the limitations period because,
     among other reasons, he did not exercise due diligence in discovering the factual predicate of his
28   claims and thus was not entitled to such a delayed start of the limitations period under 28 U.S.C.
     § 2254(d)(1)(D).  *Id.* at 5-6.

United States District Court
Northern District of California

3

1    In the present case, the statute of limitations started running on May 10, 2011, when

2    Petitioner's judgment became final sixty days after his March 11, 2011 sentencing.  *See*

3    § 2244(d)(1)(A); Cal. Rule of Court 8.308(a).  Thus, Petitioner had one year or until May 10, 2012

4    to file his federal habeas petition.  *See* 28 U.S.C. § 2244(d).

5    Petitioner did not file the present petition until September 4, 2013, almost a year and four

6    months after the limitations period had expired.  The petition is therefore untimely unless

7    Petitioner can show that he is entitled to equitable tolling.[5]

8    **B.    Standard for Equitable Tolling**

9    The Supreme Court has determined that AEDPA's statute of limitations is subject to

10   equitable tolling in appropriate cases.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  "When

11   external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

12   claim, equitable tolling of the statute of limitations may be appropriate."  *Miles v. Prunty*, 187

13   F.3d 1104, 1107 (9th Cir. 1999).  However, equitable tolling is unavailable in most cases because

14   extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's

15   control make it impossible to file a petition on time."  *See Calderon v. United States Dist. Court

16   (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted), *overruled in part on other

17   grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc).

18   The party seeking equitable tolling bears the burden of establishing two elements: "(1) that he has

19   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

20   way," preventing timely filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  "[T]he threshold

21   necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the

22   rule."  *Id.* at 1066 (internal quotations and citation omitted).  At the same time, "[r]ather than let

23   procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave

24   difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor."  *Lott v.

25   Mueller*, 304 F.3d 918, 920 (9th Cir. 2002).  When a prisoner is proceeding *pro se*, his allegations

26

27   _____

28   [5] As mentioned above, the Court previously found that the time bar to Petitioner's federal
     habeas petition could not be overcome by statutory tolling, and that Petitioner was not entitled to a
     delayed commencement of the limitations period.  Dkt. 22 at 4-6.

1   regarding diligence in filing a federal petition on time must be construed liberally. *Roy v.*

2   *Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

3       **C.**    **Analysis**

4       As mentioned above, the Court has found that the instant federal petition filed on

5   September 4, 2013 is untimely by almost a year and four months. Petitioner has previously sought

6   equitable tolling based on his lack of law library access. Specifically, Petitioner claimed that he

7   was confined in the administrative segregation unit of North Kern State Prison ("NKSP") from

8   March 23, 2011 through May 15, 2012, during which time he had no access to the law library.

9   Dkt. 16 at 1-2. Petitioner added that on May 15, 2012, he was transferred from NKSP to the

10   California Correctional Institution and that "this was the first time [he] had regular access to the

11   legal library and/or legal resource material to file with the courts." *Id.* at 6.

12       The Court conducted the following calculation to determine whether granting Petitioner

13   equitable tolling—from the relevant time frame of May 10, 2011 (when the limitations period

14   started to run) until May 15, 2012 (when he regained access to the law library)—would save his

15   petition from being untimely:

16           If the statute of limitations had started to run on the date he regained
     law library access on May 15, 2012, then Petitioner would have had
17   one year—or until May 15, 2013—to file his federal habeas petition.
     Petitioner could be entitled to statutory tolling because his first state
18   supreme court petition was filed on July 17, 2012, prior to the
     limitations period expiring. Before filing his first state supreme
19   court petition on July 17, 2012, the limitations period would have
     run unabated for a total of 63 days (from May 15, 2012 through July
20   17, 2012). Petitioner would have been entitled to statutory tolling
     during the almost four-month period during which his state supreme
21   court petition was pending from July 17, 2012 through November
     14, 2012. The limitations period then would have begun to run
22   again when the state supreme court denied his petition on November
     14, 2012, and it would run unabated for 294 more days until he filed
23   his federal petition on September 4, 2013. Therefore, only 357 days
     (63 days plus 294 days) of the limitations period would have run
24   before his federal petition was filed. Said another way, his federal
     petition could be timely because there was still 8 days (365 days
25   minus 357 days) of the limitations period left when he filed it. Thus,
     if Petitioner could avail of equitable tolling due to lack of law
26   library access, his federal petition *could* be timely filed based on the
     aforementioned calculation.

27   Dkt. 22 at 8-9.

28

        United States District Court
        Northern District of California

United States District Court
Northern District of California

In the Ninth Circuit, constitutionally acceptable means of access to the courts include the provision of an adequate law library or a professional or quasi-professional legal services plan. *Storseth v. Spellman*, 654 F.2d 1349, 1352 (9th Cir. 1981) (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977)).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court restricted the scope of *Bounds*, clarifying that it created only a right of "access to the courts," not an "abstract, freestanding right to a law library or legal assistance." *Id.* at 350-351.  "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 351.  The Supreme Court rejected the notion that federal courts can mandate specific hours of library availability for state prisoners, and held that although prisoners on lockdown may experience delays in receiving legal materials, where such delays are related to legitimate penological interests they have "no constitutional significance." *Id.* at 361-362.  The Supreme Court emphasized that it is the capability to challenge a conviction, "rather than the capability of turning pages in a law library, that is the touchstone" of the right to access. *Id.* at 356.  Furthermore, "ordinary prison limitations on . . . access to the law library and copier" do not constitute extraordinary circumstances or make it impossible to file a federal petition on time. *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted); *see, e.g., Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam) (prisoner's *pro se* status, law library missing a "handful" of reporter volumes, and reliance on inmate helpers who were transferred or too busy to attend to his petitions are not extraordinary circumstances "given the vicissitudes of prison life").  However, in the present action, the Court still found it "conceivable that equitable tolling might be warranted because Petitioner was prevented from preparing a timely petition due to his lack of access to the law library."  Dkt. 22 at 9.  The Court further found that Respondent "did not fully address this issue in his reply to Petitioner's opposition," stating:

> Respondent merely refers to an August 8, 2011 letter from Petitioner's attorney and states that it showed that Petitioner had the "ability to conduct legal research and prepare a claim during the relevant period." Dkt. 18 at 3.  Such an argument is conclusory, and Respondent fails to address Petitioner's claim that his lack of access

1
2
3
4

> to the law library prevented him from filing a timely petition. In support of his claim, Petitioner alleges that while he was housed in administrative segregation at NKSP, "inmates didn't have physical entry access into a facility law library for the purpose of using its legal resources." Dkt. 16 at 2. As mentioned above, Respondent has failed to refute Petitioner's allegations that he was denied law library access during that time.

Dkt. 22 at 9-10.

5
6
7
8
9

In the renewed motion to dismiss, Respondent again argues that Petitioner is not entitled to equitable tolling. First, Respondent clarifies that the aforementioned August 8, 2011 letter was not written by Petitioner's attorney, and that it was actually written by Petitioner and "reproduced" by his attorney, stating:

10
11
12
13
14

> We argued that petitioner's "reproduced" letter to his attorney dated August 8, 2011, which was during the time period when petitioner contended he was totally stymied due to lack of library access, demonstrated that he was actually able to conduct legal research during that time, because the letter set forth a coherent claim concerning conduct credits and cited a number of supporting cases. Doc. 18 at 3, citing Opp., Exh. D. However, this Court erroneously believed the letter was from petitioner's attorney. Doc. 22 at 9-10. We reiterate here that the letter showed petitioner's ability to research his claims during the relevant time period.

15
16
17

Dkt. 25 at 5 note 4 (citations omitted). Second, in response to the Court's request to address Petitioner's claim that his lack of access to the law library *prevented* him from filing a timely petition, counsel for Respondent has

18
19
20
21
22
23
24
25
26

> . . . obtained documentation from North Kern State Prison that conclusively refutes petitioner's contention. According to the prison's Operations Manual, inmates housed in administrative segregation "may access the law library resources through the paging process," whereby they request that particular legal materials be delivered to their cells. Exh. 6. Moreover, petitioner in fact obtained legal materials through the paging process no less than *nine times* during the period in question, between March 23, 2011 and May 15, 2012. Exh. 7. Specifically, petitioner received materials on June 10, 2011 (4 items); August 5, 2011 (3 items); September 23, 2011; October 7, 2011 (2 items); October 14, 2011 (2 items); January 27, 2012 (3 items); February 10, 2012; March 2, 2012 (5 items); and March 16, 2012 (4 items). *Id.* Therefore, petitioner clearly had sufficient access to the law library before the limitations period expired on May 12, 2012. He has not met his burden to show that extraordinary circumstances prevented him from filing a timely federal petition.

27
28

Dkt. 25 at 6 (footnote omitted). Counsel supports his aforementioned argument with prison logs that he received from NKSP and attached as Exhibit 7 to the renewed motion, which consist

7

1    chiefly of copies of what are purportedly the logs showing Petitioner's use of the paging process

2    to obtain legal materials during the relevant time frame.  Dkt. 25, Ex. 7.

3         In his opposition, Petitioner relies on *Bounds*, asserting that "[a]ccess to the court requires

4    that prison authorities assist inmates to prepare and file meaningful legal papers by providing

5    petitioner with adequate assistance from persons trained in the law."  Dkt. 29 at 9; *see Bounds*,

6    430 U.S. at 828.  Petitioner concedes that he "did receive material through the paging process to

7    obtain certain material" and does not dispute that the aforementioned prison logs indicate his use

8    of such a process.  Dkt. 29 at 4.  Petitioner adds that some of the materials he requested included:

9    "inmate/parolee appeal CDCR 602, proof of service, trust account withdrawal order CDCR 193,

10   California Code of Regulations Title 15, Department Operational Manual – DOM, Inmate/Parolee

11   request for interview CDCR Form 22, Legal Rights of Prisoners Handbook, and Health Care

12   Services Request CDCR Form 7362 etc."  *Id.*  Petitioner complains that he only "received the bare

13   minimum (i.e., outdated CCR Title 15/legal books if they were available, and Administrative

14   material) via the paging process for two hours inside the cell."  *Id.*  He further argues that

15   Respondent "only vaguely accounts for the times I was provided 'items,' but doesn't account for

16   times I requested paging services and did not receive [any] assistance."  *Id.* at 8.  He adds the

17   "[c]orrectional officers weren't consistent or reliable with using the paging system . . . ."  *Id.*

18   Further, Petitioner points to certain time frames where inmates were "without legal help or use of

19   the paging process" in "April-May 2011 (no legal assistance); July 2011 (no legal assistance);

20   November-December 2011 (no legal assistance); and April-May 2012 (no legal assistance)."  *Id.*

21   at 7.  Finally, Petitioner contends he did not have access to the "Law Library Electronic Data

22   System (LLEDS) computers loaded with electronic copies of legal titles accessible for inmates

23   during [his] incarceration of 3-23-2011 to 5-15-2012."  *Id.* at 6.  Petitioner claims the LLEDS

24   computers were finally installed "inside until D6 Ad/Seg holding cages as of 2014, which

25   functions as a law library."  *Id.* at 7.[6]

26   _____

27   [6] The Court finds Petitioner's remaining arguments in his opposition unavailing.
     Petitioner's argument that he "was not aware of the statute of limitations" is contradicted by the
28   fact that he has admitted that he "clearly" understood the one-year statute of limitations
     requirement.  *Compare* Dkt. 29 at 1-2 *with id.* at 8-9.  Moreover, Petitioner fails to support his

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Meanwhile, Respondent argues that "regardless whether petitioner personally visited the

2  library or had access to a computer, he clearly had sufficient "access to the courts" as

3  contemplated by *Lewis* and *Ramirez*." Dkt. 30 at 2.  Furthermore, Respondent argues that

4  Petitioner "fails to identify any particular document that he was unable to obtain in a timely

5  manner through the paging system and that he believes was necessary in order to present his

6  claim; consequently, he cannot show that the restrictions on library access proximately caused his

7  late filing." *Id.* (citing *Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010); *Waldron-Ramsey*

8  *v. Pacholke*, 556 F.3d 1008, 1013-1014 (9th Cir. 2009)).  Respondent points out that the "[f]ailure

9  to show that a 'nonfrivolous legal claim had been frustrated' is fatal to [Petitioner's] *Bounds*

10  claim." *Id.* at 2 (citing *Alvarez v. Hill*, 518 F.3d 1152, 1155 (9th Cir. 2008)).  Therefore,

11  Respondent contends that Petitioner "has not met his burden to show that he is entitled to

12  equitable tolling."  *Id.* at 2-3 (citing *Holland*, 560 U.S. at 649; *Yeh v. Martel*, 751 F.3d 1075, 1077

13  (9th Cir. 2014) ("This is a very high bar, and is reserved for rare cases.")).

14    Upon reviewing the record, this Court agrees with Respondent that Petitioner had law

15  library access through the paging process, and notes that Petitioner conceded to taking advantage

16  of it during the relevant time period.  Petitioner also acknowledged that the "paging system

17  consisted of in cell studies for two hours," but argues that "[t]he inability to research legal books,

18  legal materials, or obtain regular access to the law library on a weekly basis did restrict

19  Petitioner['s] adequate assistance, which did cause harm."  Dkt. 29 at 8 (citation omitted).

20  However, Petitioner has made conclusory allegations relating to his need for *physical* law library

21  access, and he fails to elaborate why the paging process was insufficient.  As Respondent has

22  previously pointed out, Petitioner's August 8, 2011 letter—written three months after the statute of

23  limitations commenced (on May 10, 2011)—indicated that he wished to pursue a legal claim, and

24

25  argument by showing evidence that the prison law library did not have a copy of 28 U.S.C. § 2244
   in 2011—fifteen years after AEDPA was enacted in 1996.  Equally unavailing is Petitioner's
26  argument that the prison staff could not provide him with the mailing addresses necessary for him
   to mail his state habeas petitions.  *Id.* at 5-6.  Petitioner claims that he did not obtain the necessary
27  addresses until his appellate counsel provided them to him on March 5, 2012.  *Id.*  However,
   Petitioner provides no supporting evidence that the prison was unable to provide these addresses.
28  Moreover, Petitioner fails to explain why he did not ask his appellate counsel for these addresses
   sooner, if in fact he could not obtain them from prison staff or other legal materials.

alerted his attorney that "all necessary paperwork is enclosed," and "all necessary legal documents are here to support my argument." Dkt. 16, Ex. D.  In Petitioner's attached declaration, he shows that he was able to set forth a coherent claim concerning conduct credits, and he cited a number of supporting cases. *Id.*  Therefore, the Court agrees that Petitioner's August 8, 2011 letter demonstrates his ability to conduct legal research and prepare a legal claim during the relevant time period.  Petitioner's attorney timely responded on September 4, 2011 with instructions that Petitioner brought up "legal issues" which he would have to "pursue [] with appellate or habeas counsel." Dkt. 29 at 21.  The record indicates that while Petitioner lacked physical access to the law library from March 23, 2011 through May 15, 2012, he had access to the paging system during that relevant time frame, and that he made use of the paging process.  Even though Petitioner claims he had problems because he only received the "bare minimum" of legal materials through the paging process, he fails to show diligence in pursuing his claims because he allowed *six months* to pass from September 2011 until March 2012, when he contacted his appellate attorney relating to his state habeas petitions. Dkt. 29 at 13-14.  The record shows that on March 5, 2012—two months before the limitations period expired on May 10, 2012—Petitioner's appellate counsel responded to Petitioner's March 1, 2012 letter, recommended that Petitioner file his state appellate and supreme court petitions, and included the necessary court addresses.  Dkt. 29 at 13-14.  The appellate attorney also explained that the deadline for the state appellate court petition was April 22, 2012.  *Id.* at 13.  Instead of immediately filing his state habeas petition, Petitioner waited over *four months* before filing his first state habeas petition in the California Supreme Court on July 17, 2012.  Dkt. 15, Ex. 1 (Case No. S204213).  Thus, it seems that even though Petitioner has argued that he lacked *physical* law library access and such a limitation prevented him from filing a timely federal petition, Respondent rebuts such an allegation by: (1) showing evidence of Petitioner's efforts to avail of law library access through the paging process and (2) arguing that it was Petitioner's lack of diligence as opposed to his limited access to the law library that was the cause of his untimeliness.  In addition, Petitioner has never explained why *physical* access to the law library was necessary at all in the timely filing of his petition.  Furthermore, Petitioner does not deny he was in possession of his state court record, and thus

10

1    presumably he could have prepared the bulk of the state and federal habeas petitions he filed

2    within his cell.  In sum, Petitioner fails to show either that he has been diligent or that

3    "extraordinary circumstances" stood in his way and prevented a timely filing.

4         Lastly, in his opposition to the renewed motion, Petitioner does not dispute that his petition

5    is untimely, instead he stresses that aside from his limited access to the law library, he was in need

6    of "adequate assistance from persons trained in the law."  Dkt. 29 at 9.  The Court construes the

7    aforementioned as Petitioner's renewed argument that he is entitled to equitable tolling based on

8    his *pro se* status and alleged lack of intelligence.  As mentioned in the Court's Order denying the

9    previously-filed motion to dismiss, "ignorance of the law and lack of legal sophistication do not

10   alone constitute extraordinary circumstances warranting equitable tolling."  Dkt. 22 at 8 footnote 5

11   (citing *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006)).  When accompanied with the

12   fact that Petitioner's law library access was limited, such circumstances could arguably be

13   considered "extraordinary."  However, "it is important to note that the standard for equitable

14   tolling requires both the presence of an *extraordinary circumstance* and the inmate's exercise of

15   *diligence*."  *Holland*, 560 U.S. at 649; *Pace*, 544 U.S. at 418.  At the time the Court denied

16   Respondent's previously-filed motion to dismiss, the question of Petitioner's diligence was

17   unclear.  However, after further factual development of the record, the Court has found above that

18   Petitioner has failed to show that he exercised the requisite diligence in attempting to file a timely

19   petition.  Thus, without the requisite presence of an *extraordinary circumstance* and Petitioner's

20   exercise of *diligence*, Petitioner's allegation of his *pro* se status alone does not entitle him to

21   equitable tolling.  *Rasberry*, 448 F.3d at 1154; *cf. Cantu-Tzin v. Johnson*, 162 F.3d 295, 299-300

22   (5th Cir. 1998) (*pro se* status during state habeas proceedings did not justify equitable tolling);

23   *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (*pro se* status, illiteracy, deafness and

24   lack of legal training not external factors excusing abuse of the writ).

25        In conclusion, the Court finds that Petitioner's *pro se* status and his limited access to the

26   prison law library did not make it impossible for him to file a federal petition on time, *Beeler*, 128

27   F.3d 1288; nor were they the cause of his untimeliness, *Pace*, 544 U.S. at 418.  Accordingly,

28   Respondent's renewed motion to dismiss is GRANTED.

United States District Court
Northern District of California

11

### III.    CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

For the reasons stated above, Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

### IV.    CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      Respondent's renewed motion to dismiss petition (dkt. 25) is GRANTED, and the petition is DISMISSED with prejudice.

2.      A certificate of appealability is DENIED.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

3.      The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

4.      This Order terminates Docket No. 25.

IT IS SO ORDERED.

Dated:  December 4, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Judge